**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | |
|---|---|
| EDWARD DUFF, PAMELA DUFF, JACK DUFF, JUDY DUFF, MICHAEL McSORLEY and KATHLEEN McSORLEY, | ) ) ) No. 03:11-cv-00314-HU ) |
| Plaintiffs, | ) ) |
| vs. | ) **) FINDINGS AND RECOMMENDATION** |
| U.S. GOLD & SILVER INVESTMENTS, INC., an Oregon corporation; and LAWRENCE H. HEIM; | **)ON MOTION FOR DEFAULT JUDGMENT** ) ) ) |
| Defendants. | ) |

_____

Per A. Ramfjord
Peter D. Sax
STOEL RIVES, LLP
900 S.W. Fifth Avenue
Suite 2600
Portland, OR 97204

    Attorneys for Plaintiffs

HUBEL, United States Magistrate Judge:

On April 12, 2011, I granted the plaintiffs' motion, Dkt. #5, for entry of default against the defendants in this case for their failure to answer or otherwise respond to the plaintiffs' Complaint. Dkt. #7; *see* Dkt. #3 & #4, evidencing service of Summons and Complaint on both defendants on March 16, 2011. The matter now is before the court on the plaintiffs' motion for default judgment. Dkt. #8. The motion is supported by the

1 - FINDINGS AND RECOMMENDATION

Declaration of Jonathan J. Locke, Dkt. #9, and a brief, Dkt. #10. I submit the following Findings and Recommendation for disposition of the motion pursuant to 28 U.S.C. § 636(b)(1)(B).

The plaintiffs brought this action to recover sums they paid to the defendants for the purchase of gold and silver coins. Between March and May 2007, the plaintiffs Michael and Kathleen McSorley engaged in five transactions with the defendants for the purchase of a total of nine bags of "face-value pre-1965 U.S. silver coins," for a total price of $84,950.00. Dkt. #10, pp. 2-3; Dkt. #1, ¶ 8. At the time of each purchase, the defendants represented to the McSorleys that they could either have the coins shipped to them, or the coins could be held on account by the defendants, to be delivered to the McSorleys upon demand. The McSorleys elected to have the silver coins held on account. They paid for all of the coins in full, and received invoices from U.S. Gold showing the silver coins were "SOLD TO" the McSorleys. *Id.* On February 27, 2011, the McSorleys made demand on U.S. Gold for the delivery of $9,000 of "face-value pre-1965 U.S. silver coins." Dkt. #10, p. 3; Dkt. #1, ¶ 15. The defendants have never delivered the coins as requested.

The plaintiffs Jack and Judy Duff paid the defendants $252,000 on or about October 14, 2010, for the purchase of 180 one-ounce American Eagle gold coins. Edward and Pamela Duff paid the defendants $137,500 on or about October 21, 2010, for the purchase of 100 one-ounce American Eagle gold coins. The defendants represented to Jack and Edward Duff that delivery of the gold coins could take up to three months. The sales invoices for the Duffs' purchase of the gold coins contained the notation, "Customer

2 - FINDINGS AND RECOMMENDATION

accepts as much as 3 months delay before delivery." Dkt. #10, p. 4; Dkt. #1, ¶ 14. Edward Duff made demand on February 27, 2011, for delivery of the gold coins he and Pamela Duff had purchased. Jack Duff made demand on March 2, 2011, for delivery of the gold coins he and Judy Duff had purchased. The defendants have never delivered the coins as requested. Dkt. #10, p. 4; Dkt. #1, ¶¶ 18 & 19.

The court takes as true the plaintiffs' "well-pleaded allegations of fact relating to liability" upon entry of default against the defendants. *Gen. Produce Co. v. Phoenix Farmers Market, LLC*, slip op., 2011 WL 1079939, at *1 (D. Or. Jan. 13, 2011) (Clarke, J.) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) (other citations omitted). The facts, once established, are deemed "conclusive upon entry of judgment." *Id.* (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The plaintiffs must establish their damages "by proof, unless the amount is liquidated or otherwise susceptible of computation." *Id.* (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)); *see Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) ("It is well settled that a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation.") (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

Here, the plaintiffs seek damages for the defendants' failure to deliver the coins upon demand. The plaintiffs claim they are entitled to the market value of the coins the defendants failed to deliver, rather than simply the price paid for the coins. They

3 - FINDINGS AND RECOMMENDATION

assert their damages are governed by the Uniform Commercial Code ("UCC"), which governs "transactions in goods." UCC § 2-102, ORS § 72.1020. The UCC defines "goods" to exclude "money in which the price is to be paid." UCC § 2-105, ORS 72.1050(1). However, the official comment to the section states the definition of "goods" is "intended to cover the sale of money when money is being treated as a commodity," rather than simply as the medium of payment. *Id.*, comment 1. The court agrees the transactions between the plaintiffs and the defendants are governed by the UCC. The court also agrees with the plaintiffs' assertion that no evidentiary hearing is required in this case because, as discussed below, the plaintiffs' damages are "capable of mathematical calculation."

The UCC provides that when a seller fails to make delivery, the measure of damages "is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in ORS 72.7150, but less expenses saved in consequence of the seller's breach." UCC § 2-713(1), ORS 72.7130(1).[*] The "crucial time" for determining the buyer's damages "is the time at which the buyer learns of the breach." *Id.*, comment 1. As to what

---

[*]The court notes the plaintiffs have quoted from section 2-713 of the amended version of UCC § 2-713, adopted by the National Conference of Commissioners on Uniform State Laws in 2003. *See* Dkt. #10, p. 5. Oregon has not adopted revisions to ORS § 72.7130 since its original enactment in 1961. Subsection (a) quoted by the plaintiffs is virtually identical to ORS § 72.7130(1). However, subsection (b) quoted by the plaintiffs, specifying the measure of damages for repudiation by the seller, is not included in the Oregon statute. The error is harmless, however, because the plaintiffs' remedy and available damages would be the same whether the court views the defendants' breach as a failure to deliver or a repudiation.

4 - FINDINGS AND RECOMMENDATION

constitutes the "market price," the official comments explain the price used "under this section is the price for goods of the same kind and in the same branch of trade." *Id.*, comment 2.

To establish the market value of the coins in this case, the plaintiffs offer Declarations of Jonathan J. Locke. Dkt. ##9 & 13. Locke is the president of Columbia Coin Co., Inc., a family-owned and operated retail coin company based in Portland Oregon, specializing in United States coins. According to Locke, Columbia Coin is "one of the largest retail coin stores in North America." Dkt. #9, ¶ 2. As part of Locke's business, he has performed over 5,000 appraisals to determine the cash value of U.S. gold and silver coins. He states his appraisals "have been used in many court cases and by numerous federal, state and local law enforcement agencies, including the Drug Enforcement Administration and the Federal Bureau of Investigation[]." *Id.*, ¶ 4. Locke's appraisals also have been "used in hundreds of estates." *Id.* The court finds that Locke's knowledge, skill, and experience render him qualified as an expert to provide opinion evidence on the issue of the market value of the coins purchased by the plaintiffs. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and its progeny.

Locke conducted appraisals to determine the market value of the types of coins purchased by the plaintiffs from the defendants, including (1) nine $1,000 face-value bags of silver coins, as purchased by the McSorleys; 180 one-ounce American Eagle gold coins, as purchased by Jack and Judy Duff; and 100 one-ounce American Eagle gold coins, as purchased by Edward and Pamela Duff.

Locke based the appraisals on the spot price of the coins as of the date the plaintiffs made demand on the defendants for delivery. However, because February 27, 2010, was a Sunday and the domestic precious metals markets were closed, Locke's valuations of the McSorley coins and Jack and Judy Duff coins were based on the new York spot price as of Monday, February 28, 2010. *Id.*, ¶ 7.

Locke appraised the market values of the coins purchased by the plaintiffs as follows:

<u>McSorley coins</u>
9 x $1,000 Face Value bags US 90% silver coins
at $22,700 each as of February 28, 2010         $204,300

<u>Jack and Judy Duff coins</u>
180 1-oz American Eagle gold coins at $1,437.20
each as of March 2, 2011                        $258,696

<u>Edward and Pamela Duff coins</u>
100 1-oz American Eagle gold coins at $1,409.30
each as of February 28, 2010                    $140,930

*Id.*, attachments to Locke Declaration. Locke noted on each appraisal that he had not actually seen the coins in question, but was assuming, for purposes of the appraisals, that the coins were "in Industry Standard 'good delivery' or Uncirculated condition." *Id.* Locke states that in his experience, "when coins are provided by a dealer in bulk, as was to be the case here, they are virtually always in 'Industry Standard "good delivery" condition.'" Dkt. #13, ¶ 2. He indicates this is "standard practice for all coin dealers," and it would be both improper and "extremely unusual for a coin dealer to sell these types of coins in any condition other than Industry Standard 'good delivery' condition." *Id.*

The court finds the market values of the coins purchased by the plaintiffs from the defendants to be the values shown in Locke's appraisals. The plaintiffs have not claimed any

6 - FINDINGS AND RECOMMENDATION

"incidental and consequential damages as provided in ORS 72.7150," nor have they set forth any "expenses saved in consequence of the seller's breach," as provided in ORS § 72.7130(1). Thus, the plaintiff's damages are equal to the market values of the coins as found by Locke in his appraisals.

The plaintiffs have shown they are entitled to judgment as requested, and I therefore recommend that their motion for default judgment be granted, with judgment entered against the defendants and in favor of Michael and Kathleen McSorley in the amount of $204,300; in favor of Jack and Judy Duff in the amount of $258,696; and in favor of Edward and Pamela Duff in the amount of $140,930.

### *SCHEDULING ORDER*

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due by **September 26, 2011**. If no objections are filed, then the Findings and Recommendations will go under advisement on that date. If objections are filed, then any response is due by **October 14, 2011**. By the earlier of the response due date or the date a response is filed, the Findings and Recommendations will go under advisement.

IT IS SO ORDERED.

Dated this 6th day of September, 2011.

/s/ Dennis J. Hubel
Dennis James Hubel
Unites States Magistrate Judge

7 - FINDINGS AND RECOMMENDATION