**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| EDWARD DUFF, PAMELA DUFF, JACK DUFF, JUDY DUFF, MICHAEL McSORLEY and KATHLEEN McSORLEY, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| U.S. GOLD & SILVER INVESTMENTS, INC., an Oregon corporation; and LAWRENCE H. HEIM; | ) ) ) ) |
| Defendants. | ) ) |

No. 03:11-cv-00314-HU

**FINDINGS AND RECOMMENDATION ON MOTION FOR DEFAULT JUDGMENT**

_____

Per A. Ramfjord
Peter D. Sax
STOEL RIVES, LLP
900 S.W. Fifth Avenue
Suite 2600
Portland, OR 97204

    Attorneys for Plaintiffs

HUBEL, United States Magistrate Judge:

     On April 12, 2011, I granted the plaintiffs' motion, Dkt. #5, for entry of default against the defendants in this case for their failure to answer or otherwise respond to the plaintiffs' Complaint.  Dkt. #7; *see* Dkt. #3 & #4, evidencing service of Summons and Complaint on both defendants on March 16, 2011.  The matter now is before the court on the plaintiffs' motion for default judgment.  Dkt. #8.  The motion is supported by the

1 - FINDINGS AND RECOMMENDATION

1  Declaration of Jonathan J. Locke, Dkt. #9, and a brief, Dkt. #10.
2  I submit the following Findings and Recommendation for disposition
3  of the motion pursuant to 28 U.S.C. § 636(b)(1)(B).

4      The plaintiffs brought this action to recover sums they paid
5  to the defendants for the purchase of gold and silver coins.
6  Between March and May 2007, the plaintiffs Michael and Kathleen
7  McSorley engaged in five transactions with the defendants for the
8  purchase of a total of nine bags of "face-value pre-1965 U.S.
9  silver coins," for a total price of $84,950.00. Dkt. #10, pp. 2-3;
10 Dkt. #1, ¶ 8.  At the time of each purchase, the defendants repre-
11 sented to the McSorleys that they could either have the coins
12 shipped to them, or the coins could be held on account by the
13 defendants, to be delivered to the McSorleys upon demand.   The
14 McSorleys elected to have the silver coins held on account.  They
15 paid for all of the coins in full, and received invoices from U.S.
16 Gold showing the silver coins were "SOLD TO" the McSorleys.  *Id.*
17 On February 27, 2011, the McSorleys made demand on U.S. Gold for
18 the delivery of $9,000 of "face-value pre-1965 U.S. silver coins."
19 Dkt. #10, p. 3; Dkt. #1, ¶ 15.  The defendants have never delivered
20 the coins as requested.

21     The plaintiffs Jack and Judy Duff paid the defendants $252,000
22 on or about October 14, 2010, for the purchase of 180 one-ounce
23 American Eagle gold coins.   Edward and Pamela Duff paid the
24 defendants $137,500 on or about October 21, 2010, for the purchase
25 of 100 one-ounce American Eagle gold coins.   The defendants
26 represented to Jack and Edward Duff that delivery of the gold coins
27 could take up to three months.  The sales invoices for the Duffs'
28 purchase of the gold coins contained the notation, "Customer

2 - FINDINGS AND RECOMMENDATION

1  accepts as much as 3 months delay before delivery." Dkt. #10, p.
2  4; Dkt. #1, ¶ 14.  Edward Duff made demand on February 27, 2011,
3  for delivery of the gold coins he and Pamela Duff had purchased.
4  Jack Duff made demand on March 2, 2011, for delivery of the gold
5  coins he and Judy Duff had purchased.  The defendants have never
6  delivered the coins as requested.  Dkt. #10, p. 4; Dkt. #1, ¶¶ 18
7  & 19.

8      The court takes as true the plaintiffs' "well-pleaded allega-
9  tions of fact relating to liability" upon entry of default against
10 the defendants.  *Gen. Produce Co. v. Phoenix Farmers Market, LLC*,
11 slip op., 2011 WL 1079939, at *1 (D. Or. Jan. 13, 2011) (Clarke,
12 J.) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917
13 (9th Cir. 1987) (other citations omitted).  The facts, once
14 established, are deemed "conclusive upon entry of judgment." *Id.*
15 (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d
16 1200, 1206 (5th Cir. 1975)).  The plaintiffs must establish their
17 damages "by proof, unless the amount is liquidated or otherwise
18 susceptible of computation." *Id.* (citing *Flaks v. Koegel*, 504 F.2d
19 702, 707 (2d Cir. 1974)); *see Davis v. Fendler*, 650 F.2d 1154, 1161
20 (9th Cir. 1981) ("It is well settled that a default judgment for
21 money may not be entered without a hearing unless the amount
22 claimed is a liquidated sum or capable of mathematical
23 calculation.") (citing *United Artists Corp. v. Freeman*, 605 F.2d
24 854, 857 (5th Cir. 1979)).

25     Here, the plaintiffs seek damages for the defendants' failure
26 to deliver the coins upon demand.  The plaintiffs claim they are
27 entitled to the market value of the coins the defendants failed to
28 deliver, rather than simply the price paid for the coins.  They

3 - FINDINGS AND RECOMMENDATION

1    assert their damages are governed by the Uniform Commercial Code
2    ("UCC"), which governs "transactions in goods."  UCC § 2-102, ORS
3    § 72.1020.  The UCC defines "goods" to exclude "money in which the
4    price is to be paid."  UCC § 2-105, ORS 72.1050(1).  However, the
5    official comment to the section states the definition of "goods" is
6    "intended to cover the sale of money when money is being treated as
7    a commodity," rather than simply as the medium of payment.  *Id.*,
8    comment 1.    The  court  agrees  the  transactions  between  the
9    plaintiffs and the defendants are governed by the UCC.   The court
10   also  agrees  with  the  plaintiffs'  assertion  that  no  evidentiary
11   hearing is required in this case because, as discussed below, the
12   plaintiffs' damages are "capable of mathematical calculation."

13        The UCC provides that when a seller fails to make delivery,
14   the measure of damages "is the difference between the market price
15   at the time when the buyer learned of the breach and the contract
16   price  together  with  any  incidental  and  consequential  damages
17   provided in ORS 72.7150, but less expenses saved in consequence of
18   the seller's breach."   UCC § 2-713(1), ORS 72.7130(1).*   The
19   "crucial time" for determining the buyer's damages "is the time at
20   which the buyer learns of the breach."  *Id.*, comment 1.  As to what

21

22        *The court notes the plaintiffs have quoted from section 2-713
23   of the amended version of UCC § 2-713, adopted by the National
     Conference of Commissioners on Uniform State Laws in 2003.  *See*
24   Dkt. #10, p. 5.  Oregon has not adopted revisions to ORS § 72.7130
     since its original enactment in 1961.  Subsection (a) quoted by the
25   plaintiffs is virtually identical to ORS § 72.7130(1).  However,
     subsection (b) quoted by the plaintiffs, specifying the measure of
26   damages for repudiation by the seller, is not included in the
     Oregon statute.   The error is harmless, however, because the
27   plaintiffs' remedy and available damages would be the same whether
     the court views the defendants' breach as a failure to deliver or
28   a repudiation.

4 - FINDINGS AND RECOMMENDATION

constitutes the "market price," the official comments explain the price used "under this section is the price for goods of the same kind and in the same branch of trade." *Id.*, comment 2.

To establish the market value of the coins in this case, the plaintiffs offer Declarations of Jonathan J. Locke. Dkt. ##9 & 13. Locke is the president of Columbia Coin Co., Inc., a family-owned and operated retail coin company based in Portland Oregon, specializing in United States coins. According to Locke, Columbia Coin is "one of the largest retail coin stores in North America." Dkt. #9, ¶ 2. As part of Locke's business, he has performed over 5,000 appraisals to determine the cash value of U.S. gold and silver coins. He states his appraisals "have been used in many court cases and by numerous federal, state and local law enforce-ment agencies, including the Drug Enforcement Administration and the Federal Bureau of Investigation[]." *Id.*, ¶ 4. Locke's appraisals also have been "used in hundreds of estates." *Id.* The court finds that Locke's knowledge, skill, and experience render him qualified as an expert to provide opinion evidence on the issue of the market value of the coins purchased by the plaintiffs. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and its progeny.

Locke conducted appraisals to determine the market value of the types of coins purchased by the plaintiffs from the defendants, including (1) nine $1,000 face-value bags of silver coins, as purchased by the McSorleys; 180 one-ounce American Eagle gold coins, as purchased by Jack and Judy Duff; and 100 one-ounce American Eagle gold coins, as purchased by Edward and Pamela Duff.

5 - FINDINGS AND RECOMMENDATION

Locke based the appraisals on the spot price of the coins as of the date the plaintiffs made demand on the defendants for delivery. However, because February 27, 2010, was a Sunday and the domestic precious metals markets were closed, Locke's valuations of the McSorley coins and Jack and Judy Duff coins were based on the new York spot price as of Monday, February 28, 2010. *Id.*, ¶ 7.

Locke appraised the market values of the coins purchased by the plaintiffs as follows:

<u>McSorley coins</u>
9 x $1,000 Face Value bags US 90% silver coins
at $22,700 each as of February 28, 2010                    $204,300

<u>Jack and Judy Duff coins</u>
180 1-oz American Eagle gold coins at $1,437.20
each as of March 2, 2011                                   $258,696

<u>Edward and Pamela Duff coins</u>
100 1-oz American Eagle gold coins at $1,409.30
each as of February 28, 2010                               $140,930

*Id.*, attachments to Locke Declaration. Locke noted on each appraisal that he had not actually seen the coins in question, but was assuming, for purposes of the appraisals, that the coins were "in Industry Standard 'good delivery' or Uncirculated condition." *Id.* Locke states that in his experience, "when coins are provided by a dealer in bulk, as was to be the case here, they are virtually always in 'Industry Standard "good delivery" condition.'" Dkt. #13, ¶ 2. He indicates this is "standard practice for all coin dealers," and it would be both improper and "extremely unusual for a coin dealer to sell these types of coins in any condition other than Industry Standard 'good delivery' condition." *Id.*

The court finds the market values of the coins purchased by the plaintiffs from the defendants to be the values shown in Locke's appraisals. The plaintiffs have not claimed any

6 - FINDINGS AND RECOMMENDATION

"incidental and consequential damages as provided in ORS 72.7150," nor have they set forth any "expenses saved in consequence of the seller's breach," as provided in ORS § 72.7130(1).   Thus, the plaintiff's damages are equal to the market values of the coins as found by Locke in his appraisals.

The plaintiffs have shown they are entitled to judgment as requested, and I therefore recommend that their motion for default judgment be granted, with judgment entered against the defendants and in favor of Michael and Kathleen McSorley in the amount of $204,300; in favor of Jack and Judy Duff in the amount of $258,696; and in favor of Edward and Pamela Duff in the amount of $140,930.

### *SCHEDULING ORDER*

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due by **September 26, 2011.** If no objections are filed, then the Findings and Recommendations will go under advisement on that date.   If objections are filed, then any response is due by **October 14, 2011.**   By the earlier of the response due date or the date a response is filed, the Findings and Recommendations will go under advisement.

IT IS SO ORDERED.

Dated this 6th day of September, 2011.

/s/ Dennis J. Hubel
Dennis James Hubel
Unites States Magistrate Judge

7 - FINDINGS AND RECOMMENDATION